UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| SOARING HELMET CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>NANAL, INC., a Nevada corporation, d/b/a LEATHERUP.COM<br><br>Defendant. | NO. C09-0789 JLR<br><br>DECLARATION OF HEATHER M. MORADO IN SUPPORT OF RESPONSE TO MOTION TO SET ASIDE DEFAULT; AND REQUEST FOR AWARD OF ATTORNEYS FEES AND COSTS |

My name is Heather Morado. I am over the age of 21, have personal knowledge of the facts stated herein, and am otherwise competent to make this declaration. I declare as follows:

1. I am an attorney at Invicta Law Group, PLLC, counsel to Plaintiff in this matter.

2. Plaintiff's original Complaint was filed on June 9, 2009. The original Complaint was incorrectly served on "Bill Me Inc.," a New York corporation. This error

DECL. OF HEATHER M. MORADO IN SUPPORT OF RESPONSE TO MOTION TO SET ASIDE DEFAULT; AND REQUEST FOR AWARD OF ATTORNEYS FEES AND COSTS – 1

INVICTA LAW GROUP, PLLC
1000 SECOND AVENUE, SUITE 3310
SEATTLE, WA 98104-1019
FAX (206) 903-6365
TEL (206) 903-6364

was caused by a false representation on the Leatherup.com website that listed the owner of the website as "Bill Me Inc. d/b/a/ Leatherup.com." A true and correct copy of a printout from the Leatherup.com website is attached hereto as <u>Exhibit A</u>.

3. On or about July 8, 2009, I spoke with counsel for Bill Me, Inc., who claimed that his client had no affiliation or connection with Leatherup.com, but did not provide a credible explanation for the misrepresentation.

4. After reviewing an online map search as well as making contacts located in Los Angeles, I determined that the physical address provided on the Leatherup.com website, 955 Venice Boulevard, is merely a warehouse, where service of process could not be effectuated.

5. The identity of the owners of Leatherup.com was not immediately apparent, and I spent a significant amount of time with my colleagues researching this question. On or about July 22, 2009, a search on the Public Access to Court Electronic Records System revealed that Leatherup.com had filed a corporate disclosure statement as "Nanal, Inc.," in *Goods Sports v. Leatherup.com,* Case No. 3:07-CV-00807-JCH. A true and correct copy of Nanal, Inc.'s corporate disclosure statement in that case it attached hereto as <u>Exhibit B</u>.

6. Soaring Helmet's Amended Complaint was filed on July 27, 2009. Defendant Nanal, Inc. ("Defendant") was served a copy of the Amended Complaint and Summons on August 6, 2009.

7. I did not receive any correspondence on behalf of Defendant until August 24, 2009, two days before the answer was due. On that day, I spoke with Shahrokh Mokhtarzadeh, of the Law Offices of Shahrokh Mokhtarzadeh ("Mr. Mokhtarzadeh"),

DECL. OF HEATHER M. MORADO IN SUPPORT OF
RESPONSE TO MOTION TO SET ASIDE DEFAULT;
AND REQUEST FOR AWARD OF ATTORNEYS
FEES AND COSTS – 2

INVICTA LAW GROUP, PLLC
1000 SECOND AVENUE, SUITE 3310
SEATTLE, WA 98104-1019
FAX (206) 903-6365
TEL (206) 903-6364

1840 071 ij150801

regarding this case. I agreed to allow Mr. Mokhtarzadeh a two-week extension to file a response, until September 9, 2009.

8. In order to attempt to reach a settlement of the case with Defendant, on or about August 24, 2009, I requested that Defendant Google, Inc. ("Google") re-note its Motion to Dismiss Counts II, III, and IV of the Complaint. Google agreed, and re-noted its motion on September 3, 2009. Pursuant to the Stipulation, we agreed not to begin working on a response to the motion until September 21, 2009.

9. During the two-week extension, I attempted to engage Defendant in good faith settlement negotiations. On August 26, 2009, I sent a settlement demand letter to Defendant, and requested a response by September 2, 2009. In this letter, I stated that any settlement of the case needed to occur before we incurred additional costs in connection with drafting a response to Google's Motion to Dismiss. We did not receive a response to our settlement demand.

10. The two-week extension of time for Defendant to answer expired on September 9, 2009, but I did not receive a response. On September 10, 2009, I received an email from Mr. Mokhtarzadeh, stating that he had received my previous correspondence. Mr. Mokhtarzadeh stated that he would respond by the following day, September 11, 2009. I did not receive a response.

11. On September 14, 2009, we sent a final settlement demand letter, and stated that if we did not receive a response by September 15, 2009, we intended to file a motion for entry of default against Defendant. We received no response.

DECL. OF HEATHER M. MORADO IN SUPPORT OF
RESPONSE TO MOTION TO SET ASIDE DEFAULT;
AND REQUEST FOR AWARD OF ATTORNEYS
FEES AND COSTS – 3

1840 071 ij150801

INVICTA LAW GROUP, PLLC
1000 SECOND AVENUE, SUITE 3310
SEATTLE, WA 98104-1019
FAX (206) 903-6365
TEL (206) 903-6364

12. On September 23, 2009, I sent Mr. Mokhtarzadeh courtesy copies of Soaring Helmet's Motion for Entry of Default and informed him that we intended to file the motion in five days pursuant to Federal Rule of Civil Procedure 55(a).

10. I never discussed nor agreed to allow Defendant an extension of time to file a response until October 1, 2009.

11. I have been licensed to practice law in Washington since 2004. My hourly rate is $225.00, which is reasonable for an attorney of my experience.

12. I was assisted in this litigation by my associates, Mark V. Jordan, Stacie Foster and Steven W. Edmiston. Mr. Jordan has been licensed to practice law in the state of Washington since 1989 and his hourly rate is $295; Ms. Foster has been licensed to practice law in the State of Washington since 1993 and her hourly rate is $270.00; and Mr. Edmiston has been licensed to practice law in the State of Washington since 1987 and his hourly rate is $270.00. These are reasonable rates for attorneys of their experience. We endeavored throughout this litigation to avoid duplication of effort.

13. RPC 1.5(a) provides the parameters for reasonable attorney fees in Washington:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

DECL. OF HEATHER M. MORADO IN SUPPORT OF
RESPONSE TO MOTION TO SET ASIDE DEFAULT;
AND REQUEST FOR AWARD OF ATTORNEYS
FEES AND COSTS – 4

INVICTA LAW GROUP, PLLC
1000 SECOND AVENUE, SUITE 3310
SEATTLE, WA 98104-1019
FAX (206) 903-6365
TEL (206) 903-6364

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved in the matter on which legal services are rendered and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent; and

(9) the terms of the fee agreement between the lawyer and the client, including whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement and of the lawyer's billing practices.

RPC 1.5(a).

14. The lodestar method of calculating a reasonable attorney award is the default principle in Washington for calculating attorney fees. *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 632 (1998). In essence, the Court must multiply a reasonable number of hours by a reasonable hourly rate.

15. In this case, had the case progressed without the delay of Defendant Nanal, Inc., ("Defendant") I would estimate that the case would be currently in the discovery period. Based upon the lodestar methodology, total reasonable attorney's fees incurred from the beginning of Defendant's delay on July 8, 2009, through the present date, October 19, 2009, are $8,456.00. The invoices to Plaintiff for fees and costs incurred by the Invicta Law Group are attached as Exhibit C.

DECL. OF HEATHER M. MORADO IN SUPPORT OF
RESPONSE TO MOTION TO SET ASIDE DEFAULT;
AND REQUEST FOR AWARD OF ATTORNEYS
FEES AND COSTS – 5

INVICTA LAW GROUP, PLLC
1000 SECOND AVENUE, SUITE 3310
SEATTLE, WA 98104-1019
FAX (206) 903-6365
TEL (206) 903-6364

16. The reasonableness of Plaintiff's fee request is also supported by the fact that Plaintiff is not requesting any fees or costs incurred with drafting its original Complaint, nor for any fees or costs incurred in connection with responding to Google's Motion to Dismiss, even though such response was necessary due to Defendant's recalcitrance. Google was voluntarily dismissed from this case under Federal Rule of Civil Procedure 41(a)(1)(A)(i) on October 15, 2009.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 19th day of October, 2009.

INVICTA LAW GROUP, PLLC

By _____
Heather M. Morado, WSBA #35135
Attorney for Plaintiff

DECL. OF HEATHER M. MORADO IN SUPPORT OF RESPONSE TO MOTION TO SET ASIDE DEFAULT; AND REQUEST FOR AWARD OF ATTORNEYS FEES AND COSTS – 6

INVICTA LAW GROUP, PLLC
1000 SECOND AVENUE, SUITE 3310
SEATTLE, WA 98104-1019
FAX (206) 903-6365
TEL (206) 903-6364

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons/attorneys of record:

Ms. Karin B. Swope
Keller Rohrback, LLC
kswope@kellerrohrback.com

Ms. Margret M. Caruso
Quinn Emanuel Urquhart Oliver & Hedges, LLP
margretcaruso@quinnemanuel.com

Ms. Katherine Hendricks
Hendricks & Lewis, PLLC
901 Fifth Avenue, Suite 4100
Seattle, WA 98164
kh@hllaw.com

Dated this 19th day of October 2009, at Seattle, Washington.

Katy M. Albritton
Legal Assistant

DECL. OF HEATHER M. MORADO IN SUPPORT OF RESPONSE TO MOTION TO SET ASIDE DEFAULT; AND REQUEST FOR AWARD OF ATTORNEYS FEES AND COSTS – 7

INVICTA LAW GROUP, PLLC
1000 SECOND AVENUE, SUITE 3310
SEATTLE, WA 98104-1019
FAX (206) 903-6365
TEL (206) 903-6364

1840 071 ij150801

# Exhibit A

# Terms And Conditions Of Use

Bill Me, Inc. d/b/a LeatherUp.com owns and operates this website (hereafter, the "Site," which shall also include any other websites owned or operated by LeatherUp.com, services related to such operation, or any communications related to LeatherUp.com). All references hereafter to LeatherUp.com shall include Bill Me, Inc., and, where appropriate, its employees, officers, directors, investors, agents, consultants, assignees, affiliates, partners, contractors, attorneys, accountants, advertisers, and any and all other individuals and organizations providing services on behalf of Bill Me, Inc.

By using the Site, you, the user of the Site ("you" or "user"), agree to the terms, conditions, notices and guidelines contained in this Terms and Conditions of Use Agreement (the "Agreement") and all modifications hereto. LeatherUp.com reserves the right, at its discretion, at any time, to change or modify the terms and conditions of this Agreement applicable to you, or any part thereof and to impose new conditions. Such changes, modifications, additions or deletions shall be effective immediately. Each time you use the Site the terms and conditions set forth in this Agreement shall apply to such use. These Terms and Conditions are supplemented by the provisions of The Plain Language Guide to the LeatherUp.com Message Boards, the provisions of which are expressly incorporated herein.

Users of the Site should periodically check for changes to this Agreement. Your continued use of the Site following the posting of changes to this Agreement on the Site, or by other means by which you obtain notice thereof means you accept those changes.

Please e-mail any questions regarding this Agreement to here. You may have this same information sent to you by e-mail by sending a letter to legal@LeatherUp.com.

IF YOU ARE UNDER THE AGE OF 18, YOU MAY NOT USE THE PRODUCTS OR SERVICES PROVIDED BY THE SITE.

IF YOU DO NOT AGREE TO COMPLY WITH THIS AGREEMENT, PLEASE DO NOT USE THIS SITE.

LeatherUp.com RESERVES THE RIGHT TO REFUSE OR REVOKE SERVICE TO YOU OR ANY USER AT ANY TIME.

LeatherUp.com SHALL HAVE THE RIGHT BUT NOT THE OBLIGATION TO MONITOR THE CONTENT OF THE SITE AND USE THEREOF TO DETERMINE COMPLIANCE WITH THIS AGREEMNENT.

**1. Intellectual Property.** The Site and all of its content including, but not limited to, articles, other text, photographs, illustrations, graphics, product names, designs, logos, video material, and audio clips (collectively, "the Intellectual Property") are protected by copyright, trademark, and other laws of the United States, as well as international conventions and the laws of other countries. The Intellectual Property is owned or controlled by LeatherUp.com or the party credited as the provider or owner of the Intellectual Property. The compilation (meaning the collection, arrangement, and assembly) of all content on the Site is the exclusive property of LeatherUp.com and protected by U.S. and international copyright laws. All software used on the Site is the property of LeatherUp.com or commercial software suppliers and is protected by U.S. and international copyright laws.

Subject to the terms and conditions hereof, you may view, copy, download, or print material appearing on the Site ("Site Materials") subject to the following conditions:

- The Site Materials may only be used for your personal, non-commercial use;
- The Site Materials may not be modified
- The Site Materials may not be copied and posted on any other web site
- All copyright, trademark, and other proprietary notices contained in all such Site Materials may not be altered or deleted and the following notice must appear on each copy of Site Materials: "Copyright © [insert year] LeatherUp.com. All rights reserved. Protected by the copyright laws of the United States and international treaties" must appear on each copy of Site Materials.

The copying, modification, revision, reproduction, republication, uploading, posting, transmission, or distribution for commercial or non-personal purposes of any Site Material or elements from the Site including, but not limited to, the design or layout of the Site, individual elements of the Site's design, or other "Trademarks" as defined below, without the express written permission of LeatherUp.com, or other owners of the Intellectual Property is strictly prohibited. For purposes of this Agreement, the use of any Site Materials on any other website or networked computer environment is prohibited.

**2. User Submissions.** Any messages, suggestions, materials, photos, works of art or authorship, ideas, or concepts that are submitted through the Site by Users ("Submitted Materials") are submitted with the express understanding that the Submitted Materials may be used without limitation by LeatherUp.com or any of its affiliates, in whole or in part, for any purpose in perpetuity, including modification, reproduction, transmission, publication, advertising, press, publicity, broadcast, and posting in any media. You additionally agree that LeatherUp.com is free to use any ideas, concepts, techniques, or know-how contained in any Submitted Materials you send to or post on or via the Site for any purpose whatsoever including, but not limited to, developing, manufacturing, marketing, and selling products and services based upon such information without any obligation to compensate you or anyone else for them. By submitting such Submitted Materials, you are conferring to LeatherUp.com a perpetual non-exclusive license to use the Submitted Materials for any and all purposes.

DO NOT POST YOUR PERSONALLY IDENTIFIABLE CONTACT INFORMATION IN ANY MESSAGE BOARDS OR OTHER PART OF THE SITE ACCESSIBLE TO USERS, INCLUDING YOUR TELEPHONE NUMBER, HOME, BUSINESS OR EMAIL ADDRESS. ANY POSTING OF SUCH PERSONAL INFORMATION IS EXPRESSLY AT YOUR OWN RISK.

**3. Trademarks.** The trademarks, logos, and service marks, including but not limited to LeatherUp.com, (collectively, the "Trademarks"), displayed on the Site are the trademarks of LeatherUp.com and other parties. All rights reserved. Nothing contained in the Site should be construed as granting by implication, estoppel or otherwise, any license or right to use any Trademark displayed on the Site without the written permission of LeatherUp.com or the third party that owns the Trademarks displayed on the Site. Your use of the Trademarks displayed on the Site, or any other content on the Site, except as provided in this Agreement, is strictly prohibited. Any other trademarks appearing on LeatherUp.com which are not the property of the Site are the property of the respective owners.

**4. User Responsibilities.** You agree that you will conduct yourself in a mature manner that lends itself to civil discourse, and that you shall use LeatherUp.com for lawful purposes only. Further, you agree not to use any facilities or resources available on or through LeatherUp.com to perpetrate prohibited conduct, whether against LeatherUp.com or any other third party. Examples of prohibited conduct include, but are not limited to chain letters, unauthorized copying of Submitted Materials, Site Materials or Intellectual Property, pornography, unsolicited advertising, postings which are deemed excessive in number or deemed to be initiated to harm the business of LeatherUp.com, or other communication that creates a nuisance or is otherwise offensive to the recipient or the LeatherUp.com audience. You represent and warrant that Submitted Materials do not infringe any third-party intellectual property rights. You agree not to transmit any unlawful, threatening, harassing, libelous, defamatory, obscene, pornographic, or profane material, any material submitted without permission under another person's name, or other material that could constitute or encourage conduct that could be considered a criminal offense or violate any law. You shall not, without the express written approval of LeatherUp.com submit any materials which contains advertising or any solicitation with respect to products or services, including any on-line information services competitive with LeatherUp.com. Site shall have the right, in its sole discretion to edit or remove any material portion of Submitted Materials, which in its sole discretion, it finds to be in violation of the provisions of this agreement or otherwise objectionable.

**5. Privacy.** By accepting this Agreement, you expressly consent to our use of your personal information as explained in our Privacy Policy, which is incorporated herein by reference. Our current Privacy Policy is available here.

**6. Limits on Liability.** You agree that at no time during or after the term of this Agreement shall LeatherUp.com be liable for:

- The contents of any communication, message, or other information sent by you or third parties to LeatherUp.com, or posted by you or other third parties on any part of the Site;
- The contents of any website not controlled, owned, or operated by LeatherUp.com that is accessed from or linked to any part of the Site;
- Any damages or injury caused by, including but not limited to, any failure of performance, error, omission, interruption, defect, delay in operation of transmission, computer virus, or line failure; and
- The results of any interpersonal interactions to which you are exposed or in which you become involved through the Site or other LeatherUp.com services, and
- Any direct, indirect, incidental, special, or consequential damages arising out of or relating to use of or inability to use any of the Site or related services, or

# Exhibit B

FILED

2007 SEP 26 A 11:06

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**GOODS SPORTS, INC.**

    **Plaintiff**          Case No.:3:07-CV-00807-JCH

**LEATHERUP.COM**

    **Defendant**         **SEPTEMBER 25, 2007**

---

## STATEMENT IDENTIFYING CORPORATE STRUCTURE

The defendant, Leatherupus.com is a trade name for a California corporation known as Grand Saz Global, Inc. and Leatherup.com is a trade name for a Nevada corporation known as NANAL, Inc. No publicly owned company holds 10% or more of the stock of said corporations.

For the Defendant

_____
Pasquale Young
Fed. Bar CT 10663\
Berdon, Young & Margolis, PC
132 Temple St.
New Haven, CT 06510
Tel. 203-772-3740
Fax: 203-492-4444
Email: Pat@bymlaw.com

BERDON, YOUNG & MARGOLIS, P.C. – ATTORNEYS AND COUNSELORS AT LAW
132 TEMPLE STREET – NEW HAVEN, CONNECTICUT 06510 – 203-772-3740
JURIS NO. 03487

Decl. of Heather M. Morado Exhibit B - 11

# Exhibit C

## Soaring Helmet vs. Nanal, Inc.
## Itemization of Fees

| Date | Attorney | Description | Time | Amount |
|---|---|---|---|---|
| 7/8/2009 | HMM | Telephone conference with counsel for Bill Me, Inc.; research re effectiveness of service of process. | 0.7 | $ 157.50 |
| 7/14/2009 | SF | Meeting w/ HMM re service and jurisdiction issues. | 0.5 | $ 135.00 |
| | MVJ | Review email from client re service of process of defendant issues; conference with HMM re same; draft email to client re service of process. | 0.7 | $ 206.50 |
| 7/15/2009 | MVJ | Emails to and from client re investigation of Nevada address. | 0.3 | $ 88.50 |
| 7/17/2009 | HMM | Telephone conference w/ Transwest Investigations re Leatherup.com; draft email correspondence to MVJ. | 0.7 | $ 157.50 |
| | MVJ | Review emails from client re service of process research; conference with HMM re same. | 0.3 | $ 88.50 |
| 7/20/2009 | MVJ | Conference with HMM re status of service of process | 0.2 | $ 59.00 |
| 7/21/2009 | HMM | Research re corporate identity of Leatherup.com. | 1.4 | $ 315.00 |
| 7/22/2009 | SF | Research company and corporate names for Leatherup.com. | 0.5 | $ 135.00 |
| | MVJ | Conference w/ HMM and SJZ re correct party and address for service of process; conference with HMM re other lawsuit against Leatherup.com. | 0.3 | $ 88.50 |
| 7/23/2009 | MVJ | Review email from client approving amended complaint and service of process. | 0.2 | $ 59.00 |
| 7/24/2009 | HMM | Review and file amended complaint; telephone conference with registered agent for Bill Me, Inc. re amended complaint. | 0.6 | $ 135.00 |
| 8/24/2009 | SF | Meeting w/ HMM; telephone conference with client re settlement opportunity w/Leatherup.com; telephone conference w/opposing counsel re same. | 0.7 | $ 189.00 |
| | HMM | Conference with SF, M. Caruso and client re status of case and Motion to Dismiss; Telephone conference with counsel for Nanal, Inc. re potential settlement. | 0.8 | $ 180.00 |
| 8/25/2009 | HMM | Draft letter to counsel for Nanal, Inc. re settlement demand; conference with SF re letter. | 1.2 | $ 270.00 |

Decl. of Heather M. Morado Exhibit C - 13

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 8/26/2009 | SF | Review and revise settlement demand letter and send to client for approval. | 0.5 | $135.00 |
| | HMM | Draft email to SF and client re settlement demand; finalize letter to counsel for Nanal, Inc. | 0.5 | $112.50 |
| 9/4/2009 | HMM | Telephone conference and draft email correspondence to S. Mokhtarzadeh re settlement status. | 0.3 | $67.50 |
| 9/14/2009 | HMM | Draft letter to S. Mokhtarzadeh re status of settlement negotiations. | 0.7 | $157.50 |
| 9/15/2009 | HMM | Telephone correspondence with S. Mokhtarzadeh re settlement. | 0.2 | $45.00 |
| 9/17/2009 | HMM | Telephone and email correspondence with S. Mokhtarzadeh and client re settlement; conference with MVJ and SF re settlement strategy. | 1.1 | $247.50 |
| 9/21/2009 | HMM | Conference with SWE re settlement with Nanal, Inc. | 0.2 | $45.00 |
| | SWE | Conference with HMM re default issues; telephone call to opposing counsel demanding response and providing notice of intent to seek default judgment. | 0.6 | $162.00 |
| | | Work on issues relating to obtaining order of default and default judgment; conference with HMM re same. | 0.6 | $162.00 |
| 9/22/2009 | HMM | Perform legal research re what constitutes a notice of appearance for purposes of default; draft Motion for Entry of Default Judgment and Declaration of HMM and SWE in Support Thereof. | 1.8 | $405.00 |
| | SWE | Work on Notice of Default; legal research; conference with HMM; review and revise pleadings. | 1 | $270.00 |
| 9/23/2009 | HMM | Prepare final drafts of Motion for Entry of Default, Declarations of HMM and SWE in Support Thereof, and Proposed Order For Default Judgment; conference with SWE and SF re motion. | 3.1 | $697.50 |
| 10/6/2009 | HMM | Review Google's response to Motion for Default; conference with SWE and SF re Motion for Final Judgment | 0.5 | $112.50 |
| 10/7/2009 | SF | Review filings on default. | 0.2 | $54.00 |
| | HMM | Perform legal research re good cause for settling aside entry of default; review Nanal, Inc.'s Motion to Set Aside Default and Declarations in Support Thereof. | 3.8 | $855.00 |
| | SWE | Review filings re appearance and Motion to Set Aside Default; conference with HMM re same. | 0.5 | $135.00 |

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 10/8/2009 | SF | Review and edit settlement demand. | 0.4 | $108.00 |
| | HMM | Perform legal research and draft letter to K. Hendricks re settlement. | 3.5 | $787.50 |
| 10/9/2009 | HMM | Telephone and email correspondence with K. Hendricks re settlement. | 0.2 | $45.00 |
| 10/15/2009 | HMM | Draft Declaration in Support of Response to Motion to Set Aside Default. | 0.4 | $90.00 |
| 10/19/2009 | SF | Meeting w/ HMM to discuss default judgment pleadings; review and edit brief. | 1.3 | $351.00 |
| | HMM | Prepare final drafts of Response to Motion to Set Aside Default and Declaration of HMM in Support Thereof; Check citations; conference with SF re Response. | 5.1 | $1,147.50 |
| Total | | | | $8,456.00 |