The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOARING HELMET CORPORATION, a Washington corporation,

Plaintiff,

v.

NANAL, INC., d/b/a LEATHERUP.COM, a Nevada corporation, and GOOGLE INC., a Delaware corporation,

Defendants.

No. C09-789-JLR

REPLY IN SUPPORT OF THE MOTION OF DEFENDANT NANAL, INC. TO SET ASIDE DEFAULT

NOTE ON MOTION CALENDAR:
October 23, 2009

**ORAL ARGUMENT REQUESTED**

Plaintiff Soaring Helmet Corporation's opposition to the motion of Defendant Nanal, Inc. to set aside the default entered against Nanal on October 2, although long on unfounded and irrelevant attacks on Nanal, is short on a reasoned basis to deny Nanal the opportunity to have this case decided on the merits. Because Plaintiff has failed to substantiate its claim that Nanal acted culpably with respect to the default and has made no showing on the other two relevant factors, Nanal respectfully requests that the Court grant its motion and set aside the default.

I.   **The Default Should be Set Aside to Allow the Case to Proceed on the Merits.**

   A.   **Only Entry of Default is at Issue.**

Plaintiff's opposition repeatedly refers to default judgments and specifically states that "the entry of default judgment should not be set aside." (Response to Motion of Defendant Nanal, Inc. to Set Aside Default ("Opp.") at p. 2.) But a default *judgment* has not been entered; rather, under FED. R. CIV. P. 55(a), the Clerk has only ordered that Nanal is in default. Although

REPLY IN SUPPORT OF NANAL'S MOTION
TO SET ASIDE DEFAULT (C09-789-JLR) - 1
{88799.DOC}

HENDRICKS & LEWIS PLLC
901 Fifth Avenue, Suite 4100
Seattle, Washington 98164
TEL: (206) 624-1933

Dockets.Justia.com

the same three factors are relevant to the decision whether to set aside both defaults and default judgments, the Ninth Circuit has made a clear distinction between the two requests for relief, stating that the District Court's discretion is especially broad when it is faced with a request to set aside a default rather than a default judgment. *See, e.g., Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). This distinction is consistent with "the overriding judicial goal of deciding cases correctly, on the basis of their legal and factual merits," when there is no judgment to trigger the competing interest in the finality of judgments. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001).

### B. All Three Factors Favor Setting Aside the Default.

Three factors guide the Court's determination on Nanal's request to set aside the default and allow the case to proceed on the merits: "(1) whether the default was culpable; (2) whether the party in default has a meritorious defense; and (3) whether granting relief would prejudice the opposing party." *Eads v. Holland Am. Line, Inc.*, No. C07-1688 RSM, 2008 WL 189673, at * 1 (W.D. Wash. Jan. 18, 2008); *see also TCI Group*, 244 F.3d at 696. Plaintiff addresses only the first factor, the alleged "culpability" of the default, and Plaintiff therefore effectively concedes that the other two factors favor setting aside the default by its failure to address Nanal's contentions on those factors.

As to the culpability factor, Plaintiff spends considerable time discussing its characterization of alleged facts that have nothing to do with Nanal's failure to file a response to the Amended Complaint. Plaintiff accuses Nanal of making a misrepresentation on its website, which Plaintiff alleges it relied upon in deciding what entity to name as the defendant in its *original* complaint. Although Nanal in no way concedes that Plaintiff's accusation is accurate, it is irrelevant to the question of whether Nanal acted "culpably" in failing to file a response to the operative pleading, namely, Plaintiff's Amended Complaint.

Similarly, to bolster its faulty culpability claim, Plaintiff exaggerates the relevant time frame by emphasizing that nearly 60 days passed between the time Nanal received actual notice of this case and Plaintiff's motion for default. But the only arguably relevant time frame for

REPLY IN SUPPORT OF NANAL'S MOTION
TO SET ASIDE DEFAULT (C09-789-JLR) - 2
{88799.DOC}

HENDRICKS & LEWIS PLLC
901 Fifth Avenue, Suite 4100
Seattle, Washington 98164
TEL: (206) 624-1933

purposes of a default is the time following the deadline for the defendant's response to the operative pleading, here, the Amended Complaint. Plaintiff filed its Amended Complaint on July 27, 2009, and served that complaint—with no difficulty—on Nanal's registered agent in Las Vegas on August 6. Nanal's response was therefore due on August 26 but, at the request of Nanal's California counsel, Shahrokh Mokhtarzadeh, Plaintiff agreed to an extension to September 9. (Declaration of Heather M. Morado in Support of Response to Motion to Set Aside Default ¶ 7; Declaration of Shahrokh Mokhtarzadeh in Support of Motion of Defendant Nanal, Inc. to Set Aside Default ¶ 7.) Both before and thereafter, Mr. Mokhtarzadeh began looking for local counsel to represent Nanal and engaged in settlement discussions with Plaintiff. (Mokhtarzadeh Decl. ¶¶ 4-12.) When Mr. Mokhtarzadeh encountered difficulties obtaining counsel, he requested a further extension to October 1, a fact which Plaintiff's counsel apparently disputes. (Mokhtarzadeh Decl. ¶¶ 9-10.) Plaintiff then filed its motion for default on October 1, which the Clerk entered on Friday, October 2, and Nanal filed its request to set aside the default only a few days later on October 7. Thus, even if the Court were to disregard Mr. Mokhtarzadeh's statement that he understood that he had been granted a second extension to October 1, Nanal's response to the Amended Complaint was overdue by, at most, 22 days.[1]

Plaintiff also has not demonstrated that Nanal failed to proffer an explanation for the default that is "inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *TCI Group*, 244 F.3d at 698. To the contrary, Nanal's actions are inconsistent with any such devious behavior. Upon receiving the Amended Complaint, Nanal's California counsel promptly attempted to contact Plaintiff's counsel, engaged in settlement discussions with her, obtained two extensions of the time to respond to the Amended Complaint and took steps to obtain Washington counsel.[2] (Mokhtarzadeh Decl. ¶¶ 2-12.) In fact, Plaintiff twice relied on the

---

[1] Plaintiff's suggestion that 60 days is an unreasonable period of time is also not persuasive given that FED. R. CIV. P. 12(a)(1)(A)(ii) specifies a 60-day response time when service is timely waived and Washington Civil Rule 12(a)(3) provides for a 60-day response time when service is made under the state's long-arm statute, as it was here.
[2] And Nanal's good faith is also demonstrated by its prompt response to Plaintiff's allegations by changing its advertising and Google advertising settings to remove any connection to the term "VEGA". (*See* Declaration of Albert Bootesaz in Support of Motion of Defendant Nanal, Inc. to Set Aside Default ¶¶ 3-5.)

REPLY IN SUPPORT OF NANAL'S MOTION
TO SET ASIDE DEFAULT (C09-789-JLR) - 3
{88799.DOC}

HENDRICKS & LEWIS PLLC
901 Fifth Avenue, Suite 4100
Seattle, Washington 98164
TEL: (206) 624-1933

settlement discussions with Nanal to obtain an extension of the time to respond to Defendant Google Inc.'s motion to dismiss. In a stipulation filed September 3, Plaintiff represented that it had requested that Google re-note the motion "so that Soaring Helmet may have the opportunity to discuss settlement with Defendant Nanal, Inc." and agreed to not begin working on its opposition to the motion before September 21. (Stipulation and Order for Briefing Schedule on Google Inc.'s Motion to Dismiss Counts II, III and IV of the Complaint, Docket No. 15, at p. 1.) In a second stipulation filed October 7, after the default had been entered, Plaintiff represented that "due to intervening efforts between [Plaintiff] and [Nanal] to resolve the case," Plaintiff and Google agreed to re-note the motion a second time. (Stipulation and [Proposed] Order for Briefing Schedule on Google Inc.'s Motion to Dismiss Counts II, III and IV of the Complaint, Docket No. 26, at p. 1.) Thus, by Plaintiff's own admission, Plaintiff and Nanal were communicating regarding settlement even after the default and therefore, while Plaintiff may have been unhappy with the progress of those discussions, such participation in the process is simply not consistent with a bad faith failure to respond to Plaintiff's Amended Complaint.[3]

Moreover, notably lacking from Plaintiff's opposition is an identification of any prejudice that would result if the default is set aside. Instead, Plaintiff relies solely upon its culpability claim, stating that the Court "need not determine whether Defendant has a meritorious defense or whether there is any prejudice to Soaring Helmet." (Opp. at p. 8.) Plaintiff likely does not claim any prejudice because none exists. As stated in Nanal's opening brief—and not disputed by Plaintiff—Nanal has already ceased the behavior alleged in Plaintiff's complaints, setting aside the default will require no change in the current case schedule, Nanal is prepared to respond to

---

[3] And none of the cases cited by Plaintiff support its opposition to Nanal's request to set aside the default. Firstly, each of the cases involved a request to set aside a default *judgment*, not a simple default as is the case here. Secondly, for that and other reasons, the cases are not factually comparable. For example, in *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, the Court found that the defaulting parties (who waited until a receiver had been appointed before doing anything about the lawsuit) had, among other things, filed false affidavits claiming they had not been served. 168 F.3d 347, 349-50 (9th Cir. 1999). Here, there is no comparable evidence of bad faith behavior by Nanal. Similarly, in *Pena v. Seguros La Comercial, S.A.*, the defaulting party, a Mexican insurance company, gave an incorrect address to the state Department of Insurance (as well as its insured, the plaintiff). 770 F.2d 811, 815 (9th Cir. 1985). But here, there is no similar allegation that Nanal failed to comply with any regulation or law; to the contrary, there is no dispute that Plaintiff had no difficulty in serving Nanal's registered agent with the Amended Complaint and that it was Nanal who made the first contact with Plaintiff through counsel after service.

REPLY IN SUPPORT OF NANAL'S MOTION
TO SET ASIDE DEFAULT (C09-789-JLR) - 4
{88799.DOC}

HENDRICKS & LEWIS PLLC
901 Fifth Avenue, Suite 4100
Seattle, Washington 98164
TEL: (206) 624-1933

the Amended Complaint as soon as it is given leave to by the Court and, with Plaintiff's dismissal of Google, Nanal is the only remaining Defendant. (Motion of Defendant Nanal, Inc. to Set Aside Default ("Motion") at p. 10.) And the fact that setting aside the default will require Plaintiff to litigate the case on the merits is not "prejudice" for purposes of determining whether "good cause" exists because Plaintiff would have had to do that if it had not received the windfall of a default. *TCI Group*, 244 F.3d at 701. Nor is the fact that the entry of default has been challenged and Plaintiff chose to oppose setting aside the default evidence of cognizable prejudice. *TCI Group*, 244 F.3d at 701 (stating that the plaintiff had not "suffered any cognizable prejudice merely by incurring costs in litigating the default" and "the fact that she chose to oppose vacating the default and was unsuccessful in doing so cannot establish prejudice"). "Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered,'" a standard Plaintiff has made no attempt to meet and which it could not meet in any event. *TCI Group*, 244 F.3d at 701 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

And Plaintiff's unfounded allegation that Nanal has been given "the opportunity to destroy evidence, complicate discovery, or otherwise commit fraud or collusion" is nothing but rank and wholly improper speculation clearly intended to disparage Nanal despite Plaintiff's admission that it has no facts to support it. (Opp. at p. 8 n.3 (admitting that Plaintiff "lacks information and belief at this time" to make the allegation).)

Similarly, Plaintiff makes no attempt to refute Nanal's assertion that it has meritorious defenses in this matter. (*See* Motion at pp. 7-10; Opp. at p. 8 n.3.) Plaintiff's failure to address this factor is a tacit admission that it favors setting aside the default.

C.   **Plaintiff's Request for Attorneys' Fees is Not Supported by the Facts.**

Plaintiff offers no basis for its alternative request for its attorneys' fees but instead simply seeks a windfall to avoid the costs of litigating its claims. Plaintiff chose to oppose Nanal's request to set aside the default even though the factors clearly favor granting the request. Moreover, Plaintiff seeks to recover fees purportedly because of Nanal's "culpable and dilatory conduct" but, as discussed above, has failed to establish such conduct. (Opp. at p. 9.)

REPLY IN SUPPORT OF NANAL'S MOTION
TO SET ASIDE DEFAULT (C09-789-JLR) - 5
{88799.DOC}

HENDRICKS & LEWIS PLLC
901 Fifth Avenue, Suite 4100
Seattle, Washington 98164
TEL: (206) 624-1933

But even if the Court were to award Plaintiff its attorneys' fees, Plaintiff's request encompasses fees that have no connection to the default. For example, Plaintiff requests fees from July 8, 2009 (before the Amended Complaint was even filed) through September 4, 2009, totaling $2,579 but Plaintiff admits that under the extension granted by Plaintiff, Nanal's response to the Amended Complaint was not due until September 9.[4] (Morado Decl. ¶ 15, Exh. C at pp. 13-14.) Plaintiff offers no support for the proposition that it is entitled to fees incurred before there was any purported "delay" on Nanal's part. Similarly, Plaintiff seeks $1,435.50 in fees associated with time purportedly spent on developing a settlement strategy, drafting a settlement demand and engaging in settlement discussions with Nanal's California counsel.[5] But again Plaintiff's decision to engage in settlement discussions with Nanal has no relevance to the default and Plaintiff therefore is not entitled to recover attorneys' fees associated with those discussions.

As a result, although Nanal contends that Plaintiff has failed to provide any basis on which an attorneys' fee award is appropriate, should the Court conclude to the contrary, at the very least, Plaintiff's inflated request should be reduced by those amounts that have no reasonable connection to the default, including at least the $4,014.50 in fees described above.

DATED this 23rd day of October, 2009.

> Respectfully submitted,
>
> HENDRICKS & LEWIS PLLC
>
> By: s/ Katherine Hendricks
> Katherine Hendricks (WSBA No. 14040)
> Stacia N. Lay (WSBA No. 30594)
> Email: kh@hllaw.com
> Email: sl@hllaw.com

---

[4] Again, Nanal's California counsel understood that Plaintiff had granted an additional extension to October 1. (Mokhtarzadeh Decl. ¶ 10.) There is no dispute, however, that Nanal had been granted an extension until September 9 to respond to Plaintiff's Amended Complaint. (Morado Decl. ¶ 7.)

[5] These fees are in the following entries: 9/14/2009 ($157.50); 9/15/2009 ($45.00); 9/17/2009 ($247.50); 9/21/2009 ($45.00); 10/8/2009 ($108.00 and $787.50); 10/9/2009 ($45.00). (Morado Decl. ¶ 15, Exh. C at pp. 13-15.) Plaintiff also improperly seeks $112.50 in fees on 10/6/09 for, in part, reviewing Google's response to the motion for default, which Google filed after default was entered. (Morado Decl. ¶ 15, Exh. C at p. 14; Docket No. 24.)

REPLY IN SUPPORT OF NANAL'S MOTION
TO SET ASIDE DEFAULT (C09-789-JLR) - 6
{88799.DOC}

HENDRICKS & LEWIS PLLC
901 Fifth Avenue, Suite 4100
Seattle, Washington 98164
TEL: (206) 624-1933

**PROOF OF SERVICE**

I am employed in the County of King, State of Washington. I am over the age of eighteen years and am not a party to the within action. My business address is Hendricks & Lewis PLLC, 901 Fifth Avenue, Suite 4100, Seattle, Washington 98164.

I hereby certify that on October 23, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Stacie Foster, Esq.<br>Steve Edmiston, Esq.<br>Heather M. Morado, Esq.<br>Invicta Law Group, PLLC<br>1000 Second Avenue, Suite 3310<br>Seattle, Washington 98104<br>Telephone: (206) 903-6364<br>sfoster@invictalaw.com<br>sedmiston@invictalaw.com<br>hmorado@invictalaw.com<br><br>Attorneys for Plaintiff Soaring Helmet Corporation | Margret M. Caruso, Esq.<br>Quinn Emanuel Urquhart Oliver &<br>Hedges, LLP<br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, California 94065<br>Telephone: (650) 810-5101<br>margretcaruso@quinnemanuel.com<br><br>Karin B. Swope<br>Keller Rohrback L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, Washington 98101<br>Telephone: (206) 623-1900<br>kswope@kellerrohrback.com<br><br>Attorneys for Defendant Google Inc. |

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Executed October 23, 2009, at Seattle, Washington.

*/s/ Lisa Schaefer*
Lisa Schaefer

REPLY IN SUPPORT OF NANAL'S MOTION
TO SET ASIDE DEFAULT (C09-789-JLR) - 7
{88799.DOC}